658 So.2d 811 (1995)
STATE of Louisiana
v.
Anthony McMANUS.
No. 94 KA 0974.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*812 Doug Moreau, Dist. Atty., Baton Rouge, for appellee State of La.
David Price, Asst. Public Defender, Baton Rouge, for appellant Anthony McManus.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
The defendant, Anthony McManus, was charged by bill of information with aggravated escape, a violation of La.R.S. 14:110. Defendant pled not guilty and, after trial by jury, was found guilty as charged. He subsequently was sentenced to five years at hard labor with credit for time served. The sentence was ordered to be served consecutively to any other sentence being served by the defendant. He has appealed, urging the following assignments of error:
1. The trial court erred in denying the motion to suppress the statements.
2. The trial court erred in overruling the defense objections to state exhibit number three.
3. The trial court erred in accepting a verdict not supported by sufficient evidence.
Assignments of error numbers one and two were not briefed on appeal and, therefore, are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4. The sole issue to resolved by this court is whether the verdict is supported by sufficient evidence.

FACTS AND TESTIMONY
Officer Duane Jones of the East Baton Rouge Parish Sheriff's Office testified he was in charge of all investigations at the parish prison. He stated prisoners were not allowed to exit particular areas of the prison without permission and, if a prisoner exited an area to which he was confined without permission, it would be considered an escape.
Officer Paul Venable of the East Baton Rouge Parish Sheriff's Office testified he investigated the defendant's escape from East Baton Rouge Parish Prison on March 1, 1993. He did not contact defendant but, rather, interviewed two of the other prisoners who had escaped. Venable did see defendant and stated that defendant was wearing "prison orange" clothing and he had cuts with one particularly "bad looking cut" to one of his legs. Venable identified defendant in court as being the person he saw.
On cross-examination, Venable testified he spoke with Charles Wood, one of the prisoners who escaped along with defendant. Venable testified Wood said he, defendant, and other inmates were in the weight room when one of the inmates realized the fire escape door was unlocked. Wood told Venable defendant stated he was going to escape and was not concerned whether or not anyone went with him.
On redirect examination, Venable stated Wood informed him the defendant planned to escape after dinner. At about 8:00 p.m., *813 defendant approached Wood and another prisoner and asked for their assistance in overpowering a guard so they could escape. The inmates concocted a plan whereby one of the inmates would approach the guard about using a mop and the other inmates would overpower the guard. Wood stated after they carried out this plan, he found a pair of handcuffs which he gave to one of the other prisoners, he moved the deputy's radio out of the deputy's reach, and found a set of keys which the inmates used to unlock a door which led to the outside of the prison compound. After leaving the building, Wood attempted to climb over the first security fence but cut his hand on the razor wire. Wood then returned to his cell block, showered, and got into his bed as if he had not taken part in the escape. Wood believed defendant was caught after having made it over the first fence but before he climbed over the second fence. Wood then told Venable defendant and another inmate initially attacked the guard on duty.
Officer Daniel McAllister of the East Baton Rouge Parish Sheriff's Office testified he investigated the instant incident. He arrested defendant and, after reading him his rights, questioned him about what happened. Defendant told him at approximately 6:00 p.m. he observed the back door to the wing where he was imprisoned was open, so he planned an escape. When he returned from dinner, he discovered the door was locked and developed another escape plan. He volunteered to mop the floor; and, when the guard on duty opened the door to the control room to give him a mop and bucket, defendant entered the control area and overpowered the guard. Defendant told the guard that he would not hurt him if he cooperated. Defendant held the officer in a "choke hold" until the other prisoners entered the area. Wood found a pair of handcuffs and gave them to another inmate to handcuff the guard. The inmates then bound the guard's feet together with strips of cloth. The prisoners then took the guard's wallet, which contained approximately $500.00, unlocked the rear door with keys they obtained from the control room, left the building, and headed toward the first security fence. Defendant climbed the first fence but did not climb over the second fence.
McAllister stated when he talked to the defendant he observed cuts on the defendant's legs which appeared to come from the razor wire. He stated defendant and the other inmates were legally detained and they intentionally departed the prison compound without authorization. After talking with defendant, McAllister believed defendant planned the escape and he was not coerced into participating in the escape.
Deputy Tom Henderson testified he was employed at the East Baton Rouge Parish Prison. On March 1, 1993, he was working as a guard in the control center of the L-wing section of the prison. He determined who entered and left that section. He stated defendant was one of the prisoners in the L-wing of which he was in charge. At one point during the evening of March 1, he noticed the rear door was unlocked; so he locked it. Later, one of the prisoners approached him about using a mop and bucket. Henderson was unable to remember the prisoner's name but stated, if the prisoner was in the courtroom, he would recognize him. Henderson never identified the prisoner who approached him about using the mop and bucket. When Henderson opened the door to give the prisoner the supplies, defendant then ran into the control room, knocked him off his stool, and Henderson fell backwards from his stool on his back into the bathroom. Defendant grabbed Henderson's neck and held him down while the other prisoners tied his feet and handcuffed him. When asked if defendant appeared to be in charge, Henderson responded that it seemed as if "everything [the defendant] said [the others] carried it out." He remembered defendant telling him not to move and he did not want to hurt him. Henderson stated he was frightened because he thought the inmates would "do something" to him if he did not cooperate. The prisoners took his wallet, which contained approximately $500.00. He subsequently recovered his wallet and all but fifty dollars of the money. The inmates then took the keys and exited the cell block, leaving Henderson tied up.
*814 Henderson stated he did not give defendant or the other inmates permission to enter the control room or exit the L-wing cell block. He stated defendant was the person who "charged" toward him while he was sitting on his stool.

DISCUSSION OF ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends in this assignment of error that the trial court erred in accepting a verdict not supported by sufficient evidence. Specifically, defendant contends that the state failed to prove endangerment to human life, which is required for a conviction of aggravated escape.
Initially, we note, in order to challenge this conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
La.R.S. 14:110(C)(1) provides:
Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
In proving human life is endangered, it is of no consequence whether the offender is armed. Under the clear wording of the statute, if the circumstances indicate beyond a reasonable doubt human life was endangered, then that particular element of aggravated escape is proven sufficiently. State v. Desselle, 614 So.2d 276, 279 (La.App. 3d Cir.1993).
We find the state proved all the elements of the crime of aggravated escape. The record clearly establishes defendant endangered the life of Henderson while escaping from the parish prison. Henderson was knocked off the stool onto the floor and then held by the neck in a choke hold while he was handcuffed and his feet were tied. The inmates exited the building leaving Henderson, the only guard on duty in the control center, tied up.

CONCLUSION
After a careful review of the record, considering all of the evidence as favorable to the prosecution, we believe a rational trier of fact could have concluded that the state proved beyond a reasonable doubt the essential elements of the crime and that defendant was guilty of aggravated escape. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.