801 So.2d 408 (2001)
STATE of Louisiana
v.
Christopher ARNOLD.
No. K99-742.
Court of Appeal of Louisiana, Third Circuit.
April 11, 2001.
*409 Asa A. Skinner, Leesville, LA, Counsel for State of Louisiana.
Terry Lambright, Leesville, LA, Counsel for Defendant-Relator: Christopher Arnold.
Court composed of DOUCET, C.J., and THIBODEAUX and SAUNDERS, Judges.
THIBODEAUX, Judge.
The Defendant-Relator, Christopher Arnold, filed a post-conviction relief application from his guilty plea to the charges of attempted manslaughter, reduced from attempted second degree murder, and aggravated escape.[1] Denying his double jeopardy argument, the trial court stated:
It is the opinion of the Court that the conduct which resulted in the charge of attempted murder was the beating of the deputy by a co-defendant, Mario Williams, with a mop handle which, as used, constituted a dangerous weapon. The defendant's conduct facilitated the beating with a weapon by a co-defendant thereby making him a principal with respect to the charge of attempted second degree murder.
Defendant's own conduct in striking the deputy with his fists coupled with leaving the jail while in custody is sufficient to provide a separate factual basis to sustain the plea of aggravated escape.
From this ruling, Relator sought a writ of review by this court asserting he was subjected to double jeopardy when he entered a guilty plea to the charges of attempted manslaughter and aggravated escape and his attorney was ineffective for failing to object to the charges on this basis in the trial court. The Defendant-Relator contended he was being punished twice for his conduct of beating Deputy Ethan Crockett.
This court found as follows:
WRIT DENIED IN PART; WRIT GRANTED IN PART AND MADE PEREMPTORY: Relator's assertion that his convictions for both aggravated escape and attempted manslaughter violate *410 the prohibition against double jeopardy has merit. Nothing in the record before this court supports a finding that a life other than Deputy Crockett's was endangered or that Relator's conduct, other than the beating of the deputy, facilitated the codefendant's beating of the deputy with a weapon. Because Relator has shown a double jeopardy violation, his conviction and sentence for the less severely punishable offense of aggravated escape are vacated, and Relator's conviction and sentence of attempted manslaughter are affirmed. See State v. Steele, 387 So.2d 1175 (La.1980); State v. Vaughn, 431 So.2d 763 (La. 1983); State v. Love, 602 So.2d 1014 (La.App. 3 Cir.1992) and State ex rel. Adams v. Butler, 558 So.2d 552 (La. 1990). In all other respects, the application is denied.
 ____________________ ____________________
 s/U.G.T s/J.D.S.
Doucet, C.J. dissents, finding no double jeopardy violation. See State v. Texada, 98-1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854.
From this ruling, the State sought supervisory review by the supreme court. On October 6, 2000, the supreme court granted the writ stating:
PER CURIAM
Writ Granted. The Court of Appeal, Third Circuit, erred in its analysis of defendant's claim of a double jeopardy violation. Defendant, who has entered an unconditional guilty plea, can only attack the convictions on double jeopardy grounds if he shows a double jeopardy violation on the face of the pleadings or record. LA.CODE CRIM.PROC. art. 930.2; United States v. Broce, 488 U.S. 563, 575-76, 109 S.Ct. 757 765-766, 102 L.Ed.2d 927 (1989); State ex rel. Boyd v. State, 98-0378 (La.10/9/98), 720 So.2d 667; State ex rel. Adams v. Butler, 558 So.2d 552, 553 n. 1 (La.1990); cf. State v. Texada, 98-1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854, 863-64. Accordingly, the judgment of the court of appeal is vacated and set aside and this case is remanded to the appellate court for further consideration of defendant's claim of a double jeopardy violation based only on the face of the pleadings and record.
State v. Arnold, 00-0570 (La.10/6/00); 770 So.2d 332.
In light of the supreme court's ruling, we have reconsidered Relator's writ application.

LAW AND DISCUSSION
United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) held that one exception to the general rule that a guilty plea forecloses a collateral attack on a conviction is, if on the face of the indictment or record, a defendant's conviction violates the prohibitions against double jeopardy. The supreme court found that separate conspiracies were described on the face of the indictments. The court noted that the defendants could not prove their claim by relying on those indictments or the existing record. In support of its holding, the supreme court distinguished Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), explaining:
In neither Blackledge nor Menna did the defendants seek further proceedings at which to expand the record with new evidence. In those cases, the determination that the second indictment could not go forward should have been made by the presiding judge at the time the plea was entered on the basis of the existing record. Both Blackledge and Menna could be (and ultimately were) resolved without any need to venture *411 beyond that record. In Blackledge, the concessions implicit in the defendant's guilty plea were simply irrelevant, because the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all. In Menna, the indictment was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced so that the admissions made by Menna's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense.
Respondents here, in contrast, pleaded guilty to indictments that on their face described separate conspiracies. They cannot prove their claim by relying on those indictments and the existing record. Indeed, as noted earlier, they cannot prove their claim without contradicting those indictments, and that opportunity is foreclosed by the admissions inherent in their guilty pleas. We therefore need not consider the degree to which the decision by an accused to enter into a plea bargain which incorporates concessions by the Government, such as the one agreed to here, heightens the already substantial interest the Government has in the finality of the plea.
United States v. Broce, 488 U.S. at 575-576, 109 S.Ct. at 765-766.
In State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990), the defendant was charged in separate bills of information with armed robbery and attempted first degree murder. The defendant entered a guilty plea to both charges. The defendant filed an application for post conviction relief arguing that the convictions of attempted first degree murder and the underlying felony of armed robbery violated the double jeopardy clause of the federal and state constitutions. The trial judge denied the application but the court of appeal granted defendant's application finding a double jeopardy violation. The appellate court summarily vacated the conviction and sentence of the less severely punishable offense of attempted first degree murder, and it affirmed the conviction and sentence of the more severely punishable offense of armed robbery. The state filed writs with the supreme court. The supreme court agreed there was a double jeopardy violation stating, in pertinent part:
The facts are undisputed that defendant seriously injured the victim during the course of an armed robbery. The state concedes that the convictions for attempted first degree murder and the underlying felony of armed robbery violate double jeopardy.
Id. at 553. In footnote 1, the court explained:
Defendant's guilty pleas do not foreclose his double jeopardy challenge under United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), because the convictions for attempted first degree murder and the underlying felony of armed robbery constitute a violation of double jeopardy apparent on the face of the record.
Id. at 555. The supreme court vacated the appellate court remedy, affirming the defendant's conviction and sentence for attempted first degree murder and vacating the defendant's conviction and sentence for armed robbery.
In State v. Texada, 98-1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854, the defendant contended his convictions as a principal to aggravated battery and aggravated escape during the same trial violated his constitutional guarantee against double jeopardy. The defendant explained that the conviction for aggravated escape could be proven by the same evidence used to convict him of the crime of aggravated *412 battery because it required the use of physical force or endangerment of human life. This court found as follows:
One of the theories on which the State relied to prove the aggravated escape was the placing of the two deputies in fear of their lives. The bill of information charged the Defendant with having committed an aggravated battery upon the person of Deputy Stelly. The inmates, who were armed with and brandishing metal rods, also told Deputy Bonvillian to get down on the floor and he was kicked twice during the encounter. The guards were then locked in a cell block, unarmed. Additionally, during its opening statement, the State discussed several theories regarding conditions left behind by the escaping inmates which endangered human life. Although no one could get out of their cells to harm the guards, Deputy Bonvillian testified that he was still scared because he did not know where the escapees were and he and Deputy Stelly were unarmed in the cell block. It was also established at trial that approximately one hundred prisoners were left unguarded because the guards were locked up with no one to man the control room. Some of the inmates had not been locked down yet and were allowed to roam free in the day room of their cell blocks for three and a half hours. The escapees also took from the control room the main key which opened every door in the jail, allowing the prisoners access to every part of the jail. Therefore, the escape of these three prisoners not only endangered the lives of Deputies Stelly and Bonvillian, but other employees of the jail and the lives of all of the inmates who were housed on the third floor without any immediate supervision. While the Defendant's claim might have had some merit if the only life endangered was that of Deputy Stelly because of the battery inflicted upon him with the metal rod, other evidence presented at trial proved that the lives of many others were placed in danger because of the actions of the Defendant.
Id. at 863-864.
According to Broce, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927, a defendant who enters a guilty plea waives raising a double jeopardy claim unless on the face of the "indictments or the existing record" there appears a double jeopardy violation. Additionally, the Broce court noted: "... the determination ... should have been made ... at the time the plea was entered on the basis of the existing record." In Taylor v. Whitley, 933 F.2d 325, 328 (5th Cir.1991), cert. denied, 503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395, the court instructed "to look at the face of the indictments or record to determine a double jeopardy violation." In U.S. v. Kaiser, 893 F.2d 1300 (11th Cir.1990), the court clarified the Broce standard, citing Broce and Menna, explaining that an exception to a collateral attack on a guilty plea occurs when a charge against a defendant, "judged on the basis of the record that existed at the time the guilty plea was entered, is one the State may not constitutionally prosecute." Id. at 1302.
In State ex rel. Boyd v. State, 98-0378 (La.10/9/98); 720 So.2d 667, writ denied, 98-0378 (11/25/98); 729 So.2d 571, the Louisiana Supreme Court noted that relator had shown a double jeopardy violation "on the face of the record of the proceedings leading to his guilty plea." Id. at 667. In Arnold, 770 So.2d 332, the court stated that "[d]efendant, who has entered an unconditional guilty plea, can only attack the convictions on double jeopardy grounds if he shows a double jeopardy violation on the face of the pleadings or record." Id. at 332.
*413 Under Broce, it is clear that no evidence taken after a guilty plea has been entered (or after the Boykin hearing) may be considered to determine a double jeopardy violation. However, Broce and the cases applying Broce do not specifically provide what encompasses the "pleadings or record" in determining a double jeopardy violation.
Article 852 of the Louisiana Code of Civil Procedure provides in pertinent part:
The pleadings allowed in civil actions, whether in a principal or incidental action, shall be in writing and shall consist of petitions, exceptions, written motions, and answers. No replicatory pleadings shall be used and all new matter alleged in exceptions, contradictory motions, and answers, whether in a principal or incidental action, shall be considered denied or avoided.
Louisiana Revised Statutes 13:1897 provides:
In an appeal from a judgment rendered in a criminal case by a parish, city or municipal court, the clerk shall, within the delays prescribed by law, make or cause to be made a transcript of the proceedings in the case, and shall file the same in the office of the clerk of court for the court to which the appeal is returnable.
The record on appeal shall consist of the affidavit, information, or indictment, as the case may be, and a complete record of all evidence upon which the judgment is based. The testimony of witnesses may be electronically recorded and, except where the review is sought in the supreme court, such recording may be used on appeal in lieu of a transcription of the testimony.
Louisiana Supreme Court Rule 1 section 6 provides:
Records in criminal cases shall contain the following matters in the following order:
(a) Indices of filings, oral testimony, and documents or exhibits, prepared as in the cases of civil appeals (see Section 5(a), (b), and (c) above);
(b) Typed copies of minute entries, showing the opening of court, the impaneling of the grand jury by which the indictment (if the prosecution was by indictment) was found, list of challenges for cause, list of peremptory challenges, list of petit jurors selected, list of all evidence, list of all witnesses, time when jury went out and returned, and the jury's verdict, in chronological order;
(c) The indictment or information, all pleas, demurrers, and motions and orders, including the verdict and sentence, in the order in which they were filed, made, returned, or imposed;
(d) The assignment of error in numerical order and the trial judge's per curiams, if any, which should follow each assignment of error. If the evidence necessary to form a basis for the assignment of error has been transcribed elsewhere in the record, such as in a full transcript of the trial, it may be incorporated by reference to the appropriate page numbers of the transcript or record, so as to dispense with unnecessary duplication in the record;
(e) The transcript of oral evidence at the trial and at any preliminary hearing, if made part of the record, each being prepared as in the case of transcripts for civil appeals (see Section 5(I) above). In capital cases in which a sentence of death has been imposed and appealed to this Court, the record shall conform to the other requirements of this section and shall also contain, in addition to a complete transcript of the oral evidence offered at the guilt and penalty phases *414 of trial, transcripts of the following: all pre-trial evidentiary hearings in chronological order in which they occurred; voir dire examination of prospective jurors in its entirety; opening statements of counsel at the beginning of the guilt phase; closing arguments of counsel at the guilt phase and the state's rebuttal argument; the trial court's jury instructions at the guilt phase and the jury's return of its verdict(s); opening statements of counsel at the penalty phase; closing arguments of counsel at the penalty phase and the state's rebuttal argument; the trial court's jury instructions at the penalty phase and the jury's return of its sentencing determination(s). The transcripts of pre-trial hearings shall conform to the requirements of Section 5(I) above, and the transcript of voir dire examination shall identify each prospective juror by name as he or she is questioned and the party litigant conducting the examination. The district judge in the court in which the case was tried shall retain all notes and tape recordings of the proceedings as the property of the court and, as to appeals in capital cases only, shall certify that the record conforms to the requirements of this section before it is lodged in this Court.
(f) Exhibits not included in the bound volumes of the record, prepared as in the case of civil appeals (see Section 5(j) above).
In Willis v. Letulle, 597 So.2d 456, 464 (La.App. 1 Cir.1992), the court explained:
The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments and other rulings, unless otherwise designated. La.C.C.P. arts. 2127 and 2128; Official Revision Comment (d) for La.C.C.P. art. 2127.... In State ex rel. Guste v. Thompson, 532 So.2d 524, 527, n. 2 (La.App. 1st Cir.1988) appears the following:
The briefs of the parties assert facts which are not in the record and refer to exhibits which have not been filed in evidence in the record. An appellate court may not consider evidence which is outside the record. La.C.C.P. art. 2164. The briefs of the parties and the attachments thereto are not part of the record on appeal. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir. 1984). In addition, we may not consider exhibits filed in the record which were not filed in evidence, unless authorized by law to do so. See, for example, La. C.C.P. arts. 966 and 967.
See also Leyva v. Laga, 549 So.2d 914 (La.App. 3rd Cir.1989).
In State in Interest of Lawrence v. Harrell, 582 So.2d 940, 942 (La.App. 2 Cir. 1991), the court stated:
It is settled that a pleading is "filed in an action" when it has been delivered to the clerk for that purpose. American B & Tr. Co. of Lafayette v. Huval Fin., 460 So.2d 91 (La.App. 3d Cir.1984); Squatrito v. Barnett, 338 So.2d 975 (La. App. 4th Cir.1976). Once the document is so received by the clerk, it then constitutes part of the record. LSA C.C.P. Art. 253. See Succession of Greene, 158 La. 123, 103 So. 532 (1925); State v. Mitchell, 153 La. 585, 96 So. 130 (1923); Wheeling Pottery Co. v. Levi, 48 La. Ann. 777, 19 So. 752 (La.1896).
At the Boykin hearing, the State stated:
BY MR. SKINNER:
Judge, as far as the basis of the plea, I would also introduce the entire record of these proceedings, which would include two statements given by this defendant.
*415 The following documents were part of the record: (1) copy of the original bill of information; (2) minutes of court; (3) Motion for Bill of Particulars, Discovery, and Production; and (4) Answer to Motion for Bill of Particulars, and Motion for Discovery with attachments which included Affidavits and Warrants for charges of aggravated escape and attempted first degree murder along with other documents. These documents were filed into the record prior to the Boykin hearing. Additionally, as noted above, the State filed two statements by Relator into the record at the Boykin hearing.
Based upon the above case law, "pleadings or record" should be defined in this case as the above mentioned documents. We have reviewed these documents to determine whether on the face of the pleadings or record existing at the time Relator entered a guilty plea if Relator waived his double jeopardy claim.
The bill of information filed on September 27, 1994, charged Relator with the following:
MARIO WILLIAMS, MICHAEL D. WILLIAMS AND CHRISTOPHER ARNOLD
on or about AUGUST 23, 1994, in the Parish, District and State aforesaid, did unlawfully
COUNT NO. 1: attempted second degree murder of Vernon Parish Deputy Shawn Ethan Crockett, in violation of R.S. 14:27 and R.S. 14:30.1 A(2) (A Felony)
COUNT NO. 2: commit aggravated escape from the lawful custody of the Vernon Parish Sheriff's Office in violation of R.S. 14:110 C(1) (A Felony)
On October 20, 1994, Relator filed "Motion for Bill of Particulars, Discovery and Production." On November 17, 1994, the State filed "Answer to Motion for Bill of Particulars and Motion for Discovery." In its answer to Relator's motion, the State stated, in pertinent part:
NOW INTO COURT, comes the State of Louisiana through ASA A. SKINER, Assistant District Attorney of the 30th Judicial District who responds to defendant's Motions for Discovery and Bill of Particulars by providing photostatic copies and answering as follows:
1. Bill of Information No. 49,327
2. Affidavit and Warrant
3. Report of arrest and Rights Form (2)
4. Offense/Incident Report
5. Evidence Receipts (10)
6. Photographs and list
7. Witness list
8. Copy of interview with defendant and defendant's statements dated August 24, and September 13, 1994
9. Permission for Search and Seizure
Additionally, in its answers, the State responded:
13.
The State also contends and allege that this defendant hit other persons and escaped from the Vernon Parish Jail.
As part of its answers, the State attached a copy of an affidavit and warrant prepared by the sheriff's office regarding the aggravated escape charge which provided in pertinent part:
 AFFIDAVIT
STATE OF LOUISIANA
PARISH OF VERNON WARD_____________
*416
 BEFORE ME, the undersigned authority, personally came and appeared Detective
Marvin L. Hilton, Vernon Parish Sheriff's Office, who, having been by me duly sworn,
deposes and says:
That Christopher O. Arnold on or about the 23rd day of August, 1994, in the Parish
and State aforesaid did unlawfully Commit the offense of Aggravated Escape in violation
of R.S. 14:110.C, in that he did intentionally depart from the Vernon Parish Jail, where
he was being legally confined. Arnold's departure was under circumstances wherein the
life of Deputy Ethan Crockett had been endangered, in that Arnold struck Deputy
Crockett several times about the face and head, with a wooden object, approx. two feet
in length, during this incident. contrary to the form of the statutes of the State of
Louisiana in such cases made and provided, in contempt of the authority of said State,
and against the peace and dignity of the same.
 * * *
 WARRANT
STATE OF LOUISIANA TO THE SHERIFF, WARD
PARISH OF VERNON MARSHALL OR ANY OTHER
 PEACE OFFICIER:
WARD_____________
 WHEREAS, complaint has been made before me, the undersigned authority, on the
oath of Det. Marvin L. Hilton that one Christopher O. Arnold on or about the 23rd day
of August, 1994, did unlawfully Commit the offense of Aggravated Escape in violation
[sic] of R.S. 14:110 C.
Also, attached was an affidavit and warrant prepared by the sheriff's office regarding the
attempted first degree murder charge which provided in pertinent part:
 AFFIDAVIT
STATE OF LOUISIANA WARD____________
PARISH OF VERNON
 BEFORE ME, the undersigned authority, personally came and appeared Detective
Marvin L. Hilton, Vernon Parish Sheriff's Office, who, having been by me duly sworn,
deposes and says:
 That Christopher O. Arnold on or about the 23rd day of August, 1994, in the Parish
and State aforesaid did unlawfully Commit the offense of Attempted First Degree
Murder in violation of R.S. 14:27; 30, in that while he was engaged in the perpetration of
an aggravated escape from the Vernon Parish jail. He did inflict great bodily harm
upon the person of Deputy Ethan Crockett, who is a Vernon Parish Correctional Officer,
and was in performance of his duties. Arnold had specific intent to kill or inflict great
bodily harm upon Deputy Crockett in this incident. contrary to the form of the statutes
of the State of Louisiana in such cases made and provided, in contempt of the authority
of said State, and against the peace and dignity of the same.
 * * *
 WARRANT
STATE OF LOUISIANA TO THE SHERIFF, WARD
PARISH OF VERNON MARSHALL OR ANY OTHER
 PEACE OFFICER:
WARD____________
*417
 WHEREAS, complaint has been made before me, the undersigned authority, on the
oath of Det. Marvin L. Hilton that one Christopher O. Arnold on or about the 23rd day
of August, 1994, did unlawfully Commit the Offense of Attempted First Degree Murder
in violation of R.S. 14:27;30.
At the Boykin hearing, Relator's attorney stated Relator was withdrawing his plea of not guilty and entering a plea of guilty to the charges of attempted manslaughter and aggravated escape. After Relator was advised of his Boykin rights, the State gave the following factual basis in support of the plea:
BY MR. SKINNER:
This defendant, Judge, along with Mario Williams and Michael Williams, on or about August 23rd, 1994, here at the Vernon Parish jail ...
Q. Uh huh.
... this defendant, along with Mario Williams, were out using a telephone and when the jailer, Mr. Ethan Crockett-Shawn Ethan Crockett, went to put them back into the cell, Mario Williams grabbed the defendantgrabbed Mr. Crockett, Deputy Crockett from behind and they both jumped onthis defendant and Mario Williams jumped on the deputy and they beat ...
Q. Pummeled him?
BY MR. SKINNER:
Pummeled him, and Judge, I have, of course, photographs ...
Q. I think that came to mind because I'm somewhat familiar with it. I think I may have been on the criminal bench at the time that it happened, but go ahead.
BY MR. SKINNER:
And he had to be taken to the emergency room and had numerous stitches fortysomething stitches, and that was the basis for the attempted manslaughter, and in as much as that the escape wasthat there was an escape, this defendant did leave the premises of the Vernon Parish jail while he was in lawful custody of the Vernon Parish Sheriff's Department awaiting trial on other charges, and Your Honor, that's the basis of the two charges that we have here.
Then, the following exchange occurred between the trial judge and Relator:
Q. Well, you tell me what happened. Maybe we'll get at it quicker that way. Why do you want to plead guilty unless you did this thing? Tell me what happened.
A. Well, sir, I was on the phone and Mr. Crockett told me to get off the phone and I said okay and he said, "I'll give you five minutes." He come back in I'd say like two or three minutes and told me to get off the phone again. I said, "All right," then he hung the phone up and then he said, "Go to your cell." I started walking by my cell, he pushed me two times in the back, so I turned around and I grabbed him and we started tussling and tusseled by the door. That's when we fell into Mario. He saidhe said, "Christian, you're blanking up." I said, "I understand that," and we keptwe kept tussling and we fell into him so what he did he puthe put his hand on him but he didn't choke.
Q. Now, what you're saying is in defense of Mario, is that ... You're trying to come to his ...What did you do? Did you hit the man?
A. Yes sir, I did.
Q. The deputy?
A. Yes sir, I did.
Q. Did you, as he said, pummeled him? That'sthat may have been my word. From what I gather, that's what happened. Did youwell, you don't have to *418 worry about pummel if you didn't learn the meaning of it. Did you strike him several times with your fist?
A. Yes sir, I did.
Q. Did you strike him with anything else? (Interruption.) Counsel, you may be seated, please.
A. Yes sir, I did.
Q. Because, you see, what they toldwhat I was told whenI may have even issued the warrant or something like that. Or you may have appeared before me in the 72 hour, what I was told was that this man was about beat half to death, you know. Was he beaten pretty severely?
A. Yes.
Q. Did you strike him, and did this other man strike him, too?
A. No sir, I struck him, but I really didn't see him strike him if he did strike him.
Q. Who? Mario?
A. Mario.
Q. Huh. Okay. We're worried about you right now. You let Mariowho is Mario's attorney? He might be a good witness for you, I don't know. He's trying to take up for Mario, but were you trying to escape? Or after this happened, did you try to escape?
A. Well, at the moment, I wasn't trying to escape, sir, but after it happened, I took him downI took him down the stairs, so that's when I ran. I got scared, sir.
Q. This isn't the occasion when somebody fell out of the upstairs window, was it, or something like that?
(UNIDENTIFIED:)
Yes sir.
Q. It is?
A. Yes sir, it is.
Q. Was that you fell out the window?
A. No sir, I'm not.
Q. Who fell out the window?
A. I can't answer that question, sir, but I
Q. Well, just say you don't know then.
A. I don't know, because ...
Q. All right.
A. ... I didn't see it, but I ...
Q. You can answer the question but by saying you don't know.
A. But I heard he fell out the window.
Q. Who, Mario?
A. Yes sir.
Q. Yeah. Okay.
A. Ifif I didn't see it, sir, I can't answer it and say that I did see him fall off the window.
The following is a summary of Relator's statement given to police on August 24, 1994 which was introduced into the record:
On August 23, 1994, Relator was an inmate at the Vernon Parish Jail where he was sharing a cell with Mario Williams. He had been in the cell with Mario for about a week and a half. During this time, he did not discuss or plan an escape with Mario and he never overheard Mario planning or discussing an escape with anyone else. On the night of August 23, Relator asked Deputy Crockett if he could use the telephone. Deputy Crockett unlocked the cell and allowed Relator and Mario to use the phone. After a while, the deputy returned and informed Relator and Mario that it was time to return to their cells. Relator proceeded into his cell, but Mario did not follow. While in the hall, Mario grabbed the deputy around the throat, hit him with his fist and wrestled him toward the cell. Mario hit the deputy in the head causing him to fall to the floor, and he drug the deputy into the cell while the deputy was struggling trying to get away; he hit the deputy about six or seven times. *419 While in the cell, Mario hit the deputy in the back of the head with a stick taken off a shower that had been by the sink. At some point, the deputy became unconscious, and Mario obtained the deputy's keys to the other cells. Mario left the cell and released another inmate, Michael Williams, who also hit the deputy. Initially, Mario requested Relator to get the deputy's keys to open Williams' cell but Relator refused. Relator recalled Williams hitting the deputy about four or five times. Mario and Williams ran out of the cell and began throwing "t.v.'s and stuff' at the windows trying to get out. Relator remained in the cell and then picked up the deputy, and he told the deputy he would be all right. At one point, Relator ran to the front of the building and told a man named Mr. Bennett that the deputy was hurt. Relator returned to the cell and he and another inmate, Manshack, assisted the deputy to the front of the building to wait for an ambulance. After waiting for five minutes with the deputy, Relator got scared and fled. After Relator fled from the prison, he encountered several people. One was a man by the railroad tracks whom Relator asked if he had a cigarette, and the man responded he did not have one. Another was a woman sitting outside of Byrd Hospital. Relator stated he asked the women how the man (the deputy) was doing who was hurt and where the Texas highway was located. Also, he asked her for a cigarette, and she gave him one.[2]
The following is a summary of Relator's statement given to police on September 13, 1994:
On August 23, 1994, Relator was in a cell with Mario Williams. At about 8:30 p.m., Deputy Crockett allowed Relator and Mario to use the telephone located in the hallway in front of Relator's cell block. Relator recalled the deputy being the only jailer on duty that evening. While they were using the phone, the deputy locked both of the doors at the ends of the hallway and only Relator and Mario were in the hall. Between 9:00 p.m. and 9:30 p.m., the deputy returned Relator and Mario to their cell. Relator entered his cell and stood by the door. The deputy walked over to the next cell and Mario grabbed the deputy around the throat. After Mario grabbed the deputy, Relator explained:
A: When he grabbed him ... I said damn, and then they fell in the [sic] corner over there by me, and hit my leg... I got a bad leg, and I know I took Mario and moved him and Crockett swung first he hit me, and I hit him, but I hit Mario too. So I started hitting Crockett in some kind of way he shooked up and they twisted to in the inside of the cell you know he fell in there. And when he got in there I started hitting him, about two or more times and then he would say ... Help me ... Help me ... you know he say if you want out I let you out. And then Mario got the stick and hit him in the head with it three times, and say shutup.
Relator denied hitting the deputy with the stick. After Mario hit the deputy with the stick, the deputy became unconscious, and Mario took the jail door keys from the deputy and left the cell. Relator remained in the cell. Mario returned with Michael Williams who hit the deputy several times. Relator told Williams to leave the deputy alone. Mario and Williams fled. Relator ran out of the cell but returned and he and Manshack or another trustee walked the deputy downstairs. After being downstairs for a couple of minutes, Relator became scared and fled. After fleeing, he *420 encountered a man by the railroad tracks, and Relator asked the man for a cigarette. He also encountered a woman sitting outside of Byrd Hospital. Relator asked the woman how the man (the deputy) was doing, who was injured, and where the Texas highway was located. Also, Relator asked the woman for a cigarette, and she gave him one. Relator stated the woman told him she was scared, and he informed her he would not do anything to her. After seeing police officers at Byrd Hospital, Relator turned himself into the officers by walking toward the hospital swinging his white T-shirt.
The rule concerning a claim of double jeopardy arising from a single chain of events, as in this case, was set forth by this circuit in State v. Love, 602 So.2d 1014 (La.App. 3 Cir.1992), where this court applied the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists.
The "Blockburger test" was set out by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), where the court stated:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not....
The "same evidence test" has been adopted by the Louisiana Supreme Court and was explained by the court in State v. Steele, 387 So.2d 1175, 1177 (La.1980), as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ... The "same evidence test" is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
In State v. Pendelton, 96-367 (La.App. 5 Cir. 5/28/97); 696 So.2d 144, 154, writ denied, 97-1714 (La.12/19/97); 706 So.2d 450, the court explained: "Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the `same evidence' test to evaluate double jeopardy claims." State v. Miller, 571 So.2d 603 (La.1990).
Applying the same evidence test, based upon the affidavits issued by the sheriff's office, the factual basis given by the State at the Boykin hearing, and Relator's statements introduced into evidence by the State at the Boykin hearing, we find a double jeopardy violation on the face of the pleadings and the record existing at the time Relator entered his guilty plea. The same evidence, the beating of a deputy, was used to convict Relator of attempted manslaughter and aggravated escape, resulting in Relator being punished twice for the same conduct. Thus, Relator did not waive the right to raise his double jeopardy claim and we, therefore, review his claim.
Because Relator filed an application for post-conviction relief, Relator and the State were given the opportunity to present evidence and arguments at an evidentiary hearing. La.Code Crim.P. art. 930. Although it appears under Broce that evidence presented at an evidentiary hearing could not be used to determine a prima facie double jeopardy violation, it is unclear *421 whether once a prima facie double jeopardy claim has been established on the face of the pleadings and record, if a court could consider the evidence presented at an evidentiary hearing to determine the merits of a defendant's claim. For example, in Taylor, 933 F.2d at 328, the court noted the defendant may be able to prove his double jeopardy violation if the court remanded for an evidentiary hearing, but the defendant waived such a hearing when he entered his guilty plea.
In this case, at the evidentiary hearing, the State argued other deputies were endangered, in addition to Deputy Crockett, and co-defendant Mario's life was also endangered when he jumped out the window while escaping. Although the State asserted other deputies' lives were endangered, it failed to present a factual basis or any evidence to support this assertion. However, under the trial judge's findings following the evidentiary hearing, the trial judge did not rely upon the State's theory but found there was no double jeopardy violation by drawing a distinction between Relator's conduct in being a principal to the attempted manslaughter by facilitating codefendant Mario's conduct of beating the deputy with a weapon and Relator's own conduct of striking the deputy with his fist during the escape. Yet, the trial judge did not specify how Relator facilitated Mario's conduct.
The term "principal" is broadly defined to include the actual perpetrator of the crime as well as one who assists in the perpetration. State v. Knowles, 392 So.2d 651 (La.1980). Louisiana Revised Statutes 14:24 provides: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." Only those persons who knowingly participate in the planning or execution of a crime are principals. Mere presence at the scene is not enough to "concern" an individual in the crime. State v. Schwander, 345 So.2d 1173 (La.1977). Moreover, "an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Holmes, 388 So.2d 722, 726 (La.1980).
In this case, there is no evidence of Relator facilitating Mario's actions of beating the deputy; that Relator directly or indirectly counseled or procured Mario to commit the crime; that Relator planned the beating of the deputy with Mario or that Relator was aware Mario was going to attack the deputy; that Relator held the deputy while Mario beat him with the stick; or that Relator supplied or gave the stick to Mario to beat the deputy. Additionally, the affidavits filed by the sheriff's office indicate only Deputy Crockett's life was endangered. When the factual basis for the plea at the Boykin examination hearing was given, the State alleged only that Deputy Crockett was beaten. Relator's answers to the trial court's questions corroborated the factual basis given by the State. Although Relator admitted, in his statements to the police, that three other inmates were out of their cells during the incident, as well as himself and Mario, and that he hit Mario during the skirmish with the deputy, no evidence was submitted that this conduct by Relator endangered the lives of these inmates.
"[H]uman life is endangered" as set forth in La.R.S. 14:110(C)(1) has been defined as "if the circumstances indicate beyond a reasonable doubt that human life was endangered." State v. Desselle, 614 So.2d 276, 279 (La.App. 3 Cir.1993).
In Desselle, this court found that the evidence supported the finding that the defendant endangered human life, for purposes *422 of the defendant's conviction for aggravated felony escape, where the record established that the defendant endangered the lives of at least two persons by breaking into an automobile in which the driver was present, endangering the driver when a deputy shot the defendant while he was in close proximity to the driver, and the defendant elbowed a second deputy in the face, started the car, and drove away dragging the deputy along the pavement.
In State v. McManus, 94-0974 (La.App. 1 Cir. 6/23/95); 658 So.2d 811, the defendant asserted insufficient evidence was presented to convict him of aggravated escape. The court found that the record clearly established the defendant endangered the life of the deputy while escaping from the parish prison. The deputy was knocked off the stool onto the floor and then held by the neck in a choke hold while he was handcuffed and his feet were tied. The inmates exited the building leaving the deputy, the only guard on duty in the control center, tied up.
In Texada, 734 So.2d 854, the defendant was charged with aggravated battery of only one of the officers and evidence of endangering the life of the second deputy along with the state's theory that other jailers and prisoners were also endangered were used to convict the defendant of aggravated escape. This case is distinguishable from Texada, in that there was evidence of only one identifiable person, i.e., Deputy Crockett, being endangered by the actions of the defendant who was escaping. Consequently, we find that the circumstances do not indicate that because of Relator's escape, human life, other than Deputy Crockett, was endangered beyond a reasonable doubt. Furthermore, although Relator acknowledged that co-defendant Mario jumped out of the window when escaping, no evidence was presented that Mario's actions were foreseeable to Relator or that Relator was a cause of Mario's conduct.
In State v. Kalathakis, 563 So.2d 228, 231 (La.1990), the court explained:
A causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. M. Bassiouni, Substantive Criminal Law, §§ 5, 5.2 (1978). A defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have foreseen as likely to have flowed from his conduct or from those consequences which would have occurred regardless of his conduct.
We find that the trial judge erred in finding no double jeopardy violation because Relator, by pleading guilty to attempted manslaughter and aggravated escape, is being punished for the same conduct, the beating of Deputy Crockett.

Guilty Plea Set Aside
The State requested in the event the court found a double jeopardy violation, Relator's guilty plea be set aside. The State did not cite any cases to support this action and we have found no Louisiana cases where the court, in finding a double jeopardy violation, vacated a defendant's plea agreement. We, therefore, decline to vacate the guilty plea.

Remedy
The State asserted in its writ to the supreme court that this court erred in vacating the most severe sentence instead of the "most severe actual sentence," which is the aggravated escape conviction of seven years.
*423 Relator was sentenced to ten years at hard labor on the charge of attempted manslaughter and seven years at hard labor on the charge of aggravated escape, with one-half of the sentence for manslaughter to run currently to the aggravated escape sentence. In our original writ decision, we vacated the conviction and sentence for the less severely punishable offense (and the less severe sentence), aggravated escape, and affirmed Relator's conviction and sentence of attempted manslaughter.
In Butler, 558 So.2d 552, 553-554, the supreme court explained:
To remedy a violation of double jeopardy, this court has followed a procedure of vacating the conviction and sentence of the less severely punishable offense, and affirming the conviction and sentence of the more severely punishable offense. State v. Doughty, 379 So.2d 1088 (La.1980). In another case, this court followed the same procedure by vacating the conviction and sentence of the less severely punishable offense, but vacated the sentence of the affirmed conviction and remanded for resentencing. State v. Dubaz, 468 So.2d 554 (La. 1985). Although slightly different, these procedures are consistent in that each requires the court to vacate the conviction and sentence for the less severely punishable offense. In Dubaz, the court merely added the step of vacating the sentence of the affirmed conviction and remanding for re-sentencing. Further, resentencing was not an option available in Doughty because of the due process concerns of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) which prevent the imposition of a sentence that is more severe than the original one. The procedures of the Doughty and Dubaz cases form the general rule for remedying violations of double jeopardy.
This general rule provides a clear, simple method of resolving most cases. In a case involving multiple convictions, a trial judge often imposes interdependent sentences according to a scheme of punishment for a defendant's conduct as a whole. When raising a double jeopardy claim, a defendant is effectively contesting the entire scheme of punishment. A finding that the convictions violate double jeopardy disrupts the carefully crafted, interdependent sentences imposed by the trial judge. Moreover, the United States Ninth Circuit has noted that "[t]he vacating of both sentences is particularly appropriate when ... there is not one legal and one illegal sentence. Rather, it is the coexistence of the two sentences which causes the illegality." United States v. Andersson, 813 F.2d 1450, 1462 (9th Cir.1987). The general rule, based on both Doughty and Dubaz, addresses all of these concerns and provides needed flexibility. On remand, a trial judge will be able to eliminate the double jeopardy violation and resentence a defendant in accordance with the original scheme of punishment without granting a windfall to the defendant. However, the trial judge must structure a new sentence that is no more severe than the defendant's original composite sentence in accordance with North Carolina v. Pearce. United States v. Bello, 767 F.2d 1065 (4th Cir.1985).
Although this general rule will provide a clear resolution in most cases, resentencing according to the original sentencing scheme will not be possible in all cases. Restrictions on the original sentence, such as limitations on parole, probation or suspension of sentence, may prevent the restructuring of a new sentence that is not more severe than the original one. Likewise, plea bargains conditioned on specific sentences may *424 also prevent the restructuring of the sentence. When restructuring the sentence under the general rule is not feasible, courts should have the flexibility to implement the original sentencing scheme to the greatest extent possible. To accomplish this, courts should affirm the conviction with the more severe actual sentence, even though it may require vacating the conviction for the more severely punishable offense. The exception eliminates the double jeopardy violation and effectuates the original scheme of punishment to the greatest extent possible, without violating due process or plea bargains conditioned on specific sentences. (footnotes omitted).
The State's assertion that this court erred in vacating the most severe sentence instead of the "most severe actual sentence," the aggravated escape conviction of seven years, is without merit. First, this is not a case in which the defendant was sentenced pursuant to a sentencing recommendation, to a specific sentence, or in which restrictions on the original sentence such as limitations on parole, probation, or suspension of sentence prevented restructuring of a new sentence that was not more severe than the original sentence. Secondly, Relator's conviction and sentence for aggravated escape was the less severely punishable offense and the less severe actual sentence whereas the sentence imposed for the attempted manslaughter conviction was the most severely punishable offense and the more severe actual sentence. Thus, this court did not err in vacating Relator's conviction and sentence for aggravated escape.

CONCLUSION
For the foregoing reasons, we maintain our earlier writ opinion which concluded that the Defendant-Relator's convictions for both attempted manslaughter and aggravated escape violated the prohibition against double jeopardy. Therefore, his conviction and sentence for the less severely punishable offense of aggravated escape are vacated, and his conviction and sentence for attempted manslaughter are affirmed. We deny his application for post-conviction relief in all other respects.
WRIT DENIED IN PART; WRIT GRANTED IN PART AND MADE PEREMPTORY.
DOUCET, C.J., dissents and assigns written reason.
DOUCET, C.J., dissenting.
I respectfully dissent from the majority herein. After reviewing this matter, I again find no double jeopardy violation. I would deny the writ in full.
NOTES
[1] The Defendant-Relator was sentenced to ten years at hard labor on the charge of attempted manslaughter and seven years at hard labor on the aggravated escape charge, with one-half of the sentence for attempted manslaughter to run concurrently to the aggravated escape sentence.
[2] It appears the deputy was taken to Byrd Hospital for treatment.