STATE OF LOUISIANA
v.
LAMARCUS McGEE
No. 2008 KA 1076.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
NOT DESIGNATED FOR PUBLICATION
SCOTT M. PERRILLOUX, District Attorney, PATRICIA PARKER, Asst. District Attorney Amite, LA, Attorneys for State-Appellee.
MARY E. ROPER, Baton Rouge, LA, Attorney for Defendant-Appellee, Lamarcus McGee.
Before: PARRO, McCLENDON, and WELCH, JJ.
WELCH, J.
The defendant, Lamarcus McGee, was charged by grand jury indictment with aggravated rape, a violation of La. R.S. 14:42; aggravated burglary, a violation of La. R.S. 14:60; and aggravated escape, a violation of La. R.S. 14:110(C)(1). The defendant pled not guilty to all charges and, following a jury trial, he was found guilty of the responsive offense of attempted aggravated rape, a violation of La. R.S. 14:42 and 14:27, and guilty as charged on the aggravated burglary and aggravated escape charges. For the attempted aggravated rape conviction, the defendant was sentenced to forty years imprisonment at hard labor; for the aggravated burglary conviction, he was sentenced to ten years imprisonment; and for the aggravated escape conviction, he was sentenced to two years imprisonment. The sentences were ordered to run consecutively. The defendant now appeals, designating one assignment of error. We affirm the attempted aggravated rape conviction and sentence. We affirm the aggravated burglary conviction, amend the sentence, and affirm as amended. We reverse and modify the judgment of conviction of aggravated escape to a judgment of conviction of the lesser and included offense of simple escape, and remand to the trial court for resentencing on the modified judgment of conviction.

FACTS
On April 12, 2005, at about 11:30 p.m., the defendant and his cousin, Lionell Bellazar, went to Amite to the home of seventy-six-year-old C.H., who lived alone.[1] Bellazar, who knew C.H., loudly knocked on her door, rang the doorbell, and called her name. As C.H. opened the door a bit, she was struck in the face. She fell to the floor, and the defendant and Bellazar entered her house. While on the floor, C.H. was struck again on the head behind her right ear. The defendant asked where the money and guns were and threatened to kill C.H. C.H. said there were no guns, but the money was in the back bedroom. The defendant pushed her down the hall to the bedroom.
The defendant, who was holding C.H. from behind, brought her near the bed and slammed her head against the wall. C.H. was wearing only a gown and a robe. The defendant stood her up against the bed, with her back facing him, and unzipped his pants. According to C.H., who testified at trial, she felt what she thought to be a penis between her legs and five or six thrusts. The last thrust bumped her clitoris. The defendant then stopped and searched the other rooms. The defendant shoved C.H. into a closet. The defendant and Bellazar left C.H.'s home and took her vehicle. C.H. called 911. She was unable to identify her attacker. Items taken included C.H.'s deceased husband's wedding ring, watch, and tie clips and a family ring.
The following day, Captain Foster found C.H.'s vehicle at the Amite Jiffy Mart on South 51 Street. The vehicle was being driven by the defendant. The defendant was placed under arrest, "Mirandized," and booked at the Amite City Police Department. Two days later, Captain Foster interviewed the defendant. In the interview, which was videotaped, the defendant admitted to the burglary and sexual assault of C.H. However, he denied that he penetrated C.H. The defendant stated he put on a condom and "tried, but it wouldn't go in."
The day after the defendant's interview with Captain Foster, the defendant was taken out to the area where he allegedly threw the weapon, a piece of pipe, used in the incident. While the officers were searching for the piece of pipe, the defendant effected an escape by driving away in the unguarded police unit. Later that evening, the defendant was apprehended in Livingston Parish by Livingston Parish Sheriff Office deputies.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues the evidence was insufficient to support the conviction of aggravated escape. Specifically, the defendant contends the evidence was insufficient to establish that, during his escape, he put anyone's life in danger except his own. The defendant does not contest the attempted aggravated rape or aggravated burglary convictions.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also La. C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statutes 14:110(C)(1) provides:
Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
At trial, Sergeant Rodney Varnado with the Amite Police Department, testified that he and Officer Tom Session took the defendant, who was already incarcerated, out to Old Highway 51 so the defendant could show them where he allegedly threw a piece of pipe used in the burglary. According to Sergeant Varnado, the defendant was handcuffed and shackled and placed in the front seat when they drove to Old Highway 51. When they arrived at their destination, the defendant was left in the front seat, while Sergeant Varnado and Officer Session searched for the weapon in a pasture about a hundred feet from the police unit. Because it was a hot day, Sergeant Varnado left the keys in the ignition and the engine running to keep the air conditioner on. During their search, the officers looked up and observed the defendant driving away in the police unit.
Deputy Brian Smith with the Livingston Parish Sheriffs Office testified at trial that, later that same evening, the stolen police unit was found crashed in Livingston Parish on La. Highway 40 about a mile east of La. Highway 43, and the defendant had fled on foot. The defendant was spotted in a ditch off of La. Highway 43 by a motorist, who called 911. A Livingston Parish Sheriff's Office deputy found the defendant and held him at gunpoint. The defendant did not have handcuffs on.[2] The defendant ran and was apprehended by a canine unit. The defendant was handcuffed and, despite being cuffed, continued to kick and resist. The defendant informed Deputy Smith he had wrecked the police unit. According to Deputy Smith, the defendant was "scuffed up from the accident." Deputy Smith testified the defendant was transported by Acadian Ambulance and taken to Lallie Kemp Regional Medical Center for treatment "due to the severity of the wreck." Deputy Smith opined, "if you would look at the car, you wouldn't understand why someone would walk away from that crash."
If the circumstances indicate beyond a reasonable doubt that human life was endangered, then the "human life is endangered" element of aggravated escape is sufficiently proven. See La. R.S. 14:110(C)(1); State v. Desseile, 614 So.2d 276, 279 (La. App. 3rd Cir. 1993). We do not find that the facts established by the testimony indicate beyond a reasonable doubt that human life was endangered6. The defendant merely drove away in the police unit while the officers were in a field looking for a piece of pipe. There was no testimony suggesting, for instance, the defendant drove the unit toward the officers or any pedestrians. Cf. Desseile, 614 So.2d at 279-80, where the court found, for purposes of a conviction for aggravated escape, the evidence supported the finding that human life was endangered beyond a reasonable doubt where the defendant elbowed a deputy in the face, who was attempting to wrest the car keys from his control, then drove the car away, dragging the deputy along the pavement. When the defendant in the instant matter was held at gunpoint, he tried to run, and was subdued by a canine unit. He was then cuffed and continued to resist. The defendant was unarmed, and there was nothing in the testimony that suggested the defendant attacked any of the officers. Cf. State v. McManus, 94-0974, p. 6 (La. App. 1st Cir. 6/23/95), 658 So.2d 811, 814; State v. Texada, 98-1647, pp. 12-13 (La. App. 3rd Cir. 5/5/99), 734 So.2d 854, 861. We also note that, despite what the defendant suggests in his argument, there is nothing in the record that clearly indicates the defendant put even his own life in danger. While the defendant did wreck the police unit, other than Deputy Smith's opinion about the severity of the wreck, there is nothing in the record  testimonial, documentary, or otherwise  to establish the extent of the wreckage or of the defendant's injuries. The testimony at trial established only that the defendant, who was "scuffed up," walked away from the crash and continued to evade the police. Such circumstances do not indicate beyond a reasonable doubt that human life was endangered.
Accordingly, the defendant did not commit the crime of aggravated escape. Under La. C.Cr.P. art. 814, there are no statutorily listed responsive verdicts to aggravated escape. Pursuant to La. C.Cr.P. art. 815(2), however, we find that simple escape is a lesser and included grade of the offense of aggravated escape. As articulated by the Louisiana Supreme Court in State v. Simmons, 422 So.2d 138, 142 (La. 1982), the test for determining if a crime is a lesser and included offense of the offense charged is:
whether the definition of the greater offense necessarily includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.
(Emphasis deleted) (Citation omitted).
Simple escape is clearly a lesser and included offense because it does not require proof of any element that is not required in the charged offense of aggravated escape. In State v. Roy, 496 So.2d 583, 588 (La. App. 1st Cir. 1986), writ denied, 501 So.2d 228 (La. 1987), this court stated, "Essentially, an aggravated escape is a simple escape committed under circumstances wherein human life was endangered." Therefore, the trial court, by finding the defendant guilty of the greater offense of aggravated escape, necessarily found the existence of every essential element of the lesser and included offense of simple escape, and the evidence fully supports the finding of each such essential element. Under such circumstances, a reviewing court, pursuant to La. C.Cr.P. art. 821(E), may modify the lower court's decision and render a judgment of conviction of the lesser and included offense. See La. R.S. 14:5; State v. Leblanc, 506 So.2d 1197, 1201 (La. 1987); see also State v. Schenck, 513 So.2d 1159, 1165 (La. 1987). Accordingly, the judgment of conviction of aggravated escape will be reduced to simple escape.
The judgment of conviction of aggravated escape is reversed and modified to a judgment of conviction of the lesser and included offense of simple escape. The case is remanded to the trial court for sentencing on the modified judgment of conviction.

SENTENCING ERRORS
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years. La. R.S. 14:60. According to the sentencing transcript, the trial court failed to provide that the sentence for aggravated burglary was to be served at hard labor. Inasmuch as an illegal sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, La. C.Cr.P. art. 920(2) authorizes consideration of such an error on appeal. Further, La. C.Cr.P. art. 882(A) authorizes correction by the appellate court.[3] We find that correction of this illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, there is no reason why this court should not simply amend the sentence. See State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277. Accordingly, since a sentence at hard labor was the only sentence that could be imposed, we correct the sentence by providing that it be served at hard labor.
We also note the illegal sentence for the aggravated escape conviction. However, since the judgment of conviction of aggravated escape has been modified to a judgment of conviction of simple escape, and the case is remanded for sentencing on the modified judgment of conviction, the aggravated escape sentencing errors are moot.

CONCLUSION
For the foregoing reasons, we affirm the attempted aggravated rape conviction and sentence. We affirm the aggravated burglary conviction, but amend the sentence to provide that it is to be served at hard labor, and as amended, affirm the sentence. We reverse the aggravated escape conviction and modify the judgment to a conviction of simple escape. We remand to the trial court for sentencing on the modified judgment of conviction of simple escape, and, if necessary, for correction of the commitment order.
ATTEMPTED AGGRAVATED RAPE CONVICTION AND SENTENCE AFFIRMED. AGGRAVATED BURGLARY CONVICTION AFFIRMED; AGGRAVATED BURGLARY SENTENCE AMENDED TO PROVIDE THAT IT BE SERVED AT HARD LABOR AND AFFIRMED AS AMENDED. JUDGMENT OF AGGRAVATED ESCAPE CONVICTION REVERSED AND MODIFIED TO CONVICTION OF SIMPLE ESCAPE; CASE REMANDED TO THE TRIAL COURT FOR SENTENCING ON THE MODIFIED JUDGMENT OF CONVICTION OF SIMPLE ESCAPE AND, IF NECESSARY, FOR CORRECTION OF THE COMMITMENT ORDER.
NOTES
[1] Captain Mike Foster, with the Amite City Police Department, testified at trial that Bellazar was the person with the defendant. In his taped confession, the defendant stated to Captain Foster that he was with Bellazar, his cousin.
[2] Officer Smith testified that he found a handcuff key inside the defendant's right shoe.
[3] "An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." La. C.Cr.P. art. 882(A).