648 So.2d 939 (1994)
STATE of Louisiana
v.
Reuben J. HAMILTON.
No. 94-KA-696.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1994.
*940 John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Louise Korns, Asst. Dist. Attys., Gretna, for appellee.
Linda Davis-Short, Gretna, for appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
WICKER, Judge.
On September 23, 1993 Reuben Hamilton was indicted by the Jefferson Parish Grand *941 Jury for violation of La.R.S. 14:42, aggravated rape. He entered a plea of not guilty. The trial court subsequently denied his motions to suppress confession and for reconsideration of the motion to suppress confession. On February 24, 1994, the defendant pleaded guilty to violation of LSA-R.S. 14:42.1, forcible rape, a reduced charge. He reserved the right to appeal the denial of his motion to suppress confession, in accordance with State v. Crosby, 338 So.2d 584 (La.1976). On April 20, 1994, the trial court sentenced him to 40 years at hard labor, with credit for time served.
The defendant has appealed the denial of his motion to suppress confession. He also assigns as error any errors patent on the face of the record.

FACTS
In a recorded statement taken on August 12, 1993, the defendant admitted to engaging in sexual intercourse with I.H., a juvenile. The incident occurred when the defendant was supervising the victim along with her brothers and sisters. After the defendant called I.H. to her mother's bedroom to watch television with him, he started fondling her and then he inserted his penis into her vagina. In that same statement, the defendant also admitted to fondling the victim on another occasion and to molesting the victim's older twin sisters. The acts involving the twins, however, occurred outside of Jefferson Parish.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the trial court erred in refusing to suppress two recorded statements which he gave during custodial interrogation. Specifically, the defendant argues that the statements were obtained as the result of improper police pressure.
At the suppression hearing, the State presented the testimony of Detective Florida Bradstreet of the Jefferson Parish Sheriff's Office and of Detective Edward Guy of the New Orleans Police Department.
Detective Bradstreet testified that on August 11, 1993 at approximately 7:45 p.m., she began to "interview" the defendant in reference to a molestation investigation. The interview was conducted in the sheriff's office detective bureau and Detective Guy was present. In accordance with her procedure, Detective Bradstreet advised the defendant of his constitutional rights. She also presented him with a standard Rights of Arrestee form which she had filled out. The defendant signed the form, indicating that he had read the statement of his rights. Detective Bradstreet stated the detectives then conducted a "pre-interview" with the defendant in which they "talked about the accusation,... just talked, in general got a history from him, things like that ... questions and answers."
While speaking to the detectives, the defendant agreed to give a statement. When Detective Bradstreet asked the defendant to give a recorded statement; however, the defendant stated he would prefer to wait 48 hours before doing so. The defendant then wrote on the waiver-of-rights section of the Rights of Arrestee form that he "would like to resume questioning in 48 hours." According to Detective Bradstreet, this section of the form was executed by the defendant between 9:00 p.m. and 10:00 p.m. on August 11th. Thereafter, the defendant gave a recorded statement, in which he again stated his desire to wait some period of time before talking with the detectives. Following the statement, Detective Bradstreet advised the defendant that she wasn't sure she could talk to him in a couple of days. After the "interview" was concluded at approximately midnight on August 11th, Detective Guy returned to his duties with the New Orleans Police Department.
Detective Bradstreet approached her supervisor, Sergeant Renee Washington, seeking her assistance in transporting the defendant back to the Correctional Center. She informed her supervisor that the defendant did not want to give a statement; however, the defendant then changed his mind and agreed to give a statement to the officers. Prior to the second recorded statement, which was taken shortly after midnight, Detective Bradstreet again advised the defendant of his constitutional rights as listed on *942 the Rights of Arrestee form. She further testified that no promises nor threats were made to the defendant and that the defendant never asked for an attorney.
At the suppression hearing, Detective Guy testified that he sat in on an "interview" with the defendant which was conducted in the evening of August 11, 1994. During the "interview", Detective Bradstreet advised the defendant of his constitutional rights. At one point Detective Guy stepped out of the room at the defendant's request so that the defendant could speak with Detective Bradstreet. When the detectives explained to the defendant that they would make a recorded statement of what they were discussing, the defendant requested that the detectives speak with him in two days. The detectives took a recorded statement from the defendant wherein he stated that he didn't want to talk to them for 48 hours, and at that time Detective Guy explained to him that he couldn't "guarantee" that he could talk to him in two days. As Detective Guy was leaving following the first recorded statement, he overheard the defendant tell Detective Bradstreet that he would make a detailed statement for her. Detective Guy further testified that the defendant never asked for an attorney nor did anyone threaten the defendant.
The defendant testified that after he wrote that he would like to resume questioning in 48 hours, the officers continued to question him. Although they didn't promise him anything, the officers told him that if he didn't make a statement they would charge him with aggravated rape and they would send him "up the river" for life. The defendant also claimed that the officers told him that they would publicize the fact that he was being incarcerated for aggravated rape of a juvenile, and thus his safety "would be worth diddly squat." According to the defendant, after he told the officers that he wanted to wait 48 hours, Detective Bradstreet said that she wasn't sure if she could get her supervisor to agree to that, and she instructed the defendant to sign the form.
Upon reaching the front of the detective bureau, Detective Bradstreet informed her supervisor what the defendant had said. The defendant said the supervisor "blew up" at him and said: "F-no, I'm not going to have this, you done wasted enough of my time and your time. If he got a statement to make, he going to make it now or we not going to be bothered with him in a couple of days, we just going to go ahead and do what we got to do." The defendant said that the supervisor also told him that "confession is good for the soul."
The defendant further testified that he informed the officers he wanted to see an attorney, but they told him, "[N]o, because all an attorney going to do is tell you don't say nothing or tell them nothing and we not going to have it...." When presented with the transcript of his first recorded statement, which did not contain a request by him for an attorney, the defendant explained, "they say they did not hear the response. But the response was, in the presence of an attorney." The pertinent part of the statement reads as follows:
Detective Bradstreet: Uh, I understand you said at this time you prefer not to talk to me?
Defendant: Yes, ma'am.
Detective Bradstreet: Ok, is that because of the fact that you wanted to talk to an attorney first?
Defendant: No, ma'am, I wanna speak with you again after I search myself.
Detective Bradstreet: After you search yourself, you said?
Defendant: (Did not hear response).
Detective Bradstreet: Ok. Ok, I have no problem with that....
Following the defendant's testimony, Detective Bradstreet was recalled to the stand. She testified that when her supervisor, Sergeant Renee Washington, spoke to the defendant, Sergeant Washington told him that Detective Bradstreet could not come back over and talk to him again and that they would transport him back to the Correctional Center. Detective Bradstreet stated that at no time did Sergeant Washington scream at the defendant or threaten him. Detective Bradford denied that anyone threatened to send the defendant "up the river for life" as an aggravated rapist or that anyone threatened *943 to publicize to the other inmates that the defendant was incarcerated for aggravated rape of a juvenile.
In the defendant's first statement, the following pertinent exchange occurred:
Detective Guy: Uh, Mr. Reuben [defendant], after you had an opportunity to read your rights form, okay, you indicated to me that you did understand your rights, correct?
Defendant: Yes, ma'am.
Detective Guy: Okay now, I asked you a couple of questions, I'd like to ask you those questions again, for the tape. Now it's up to you whether or not you wish to answer these questions. Like I said, it's your privilege and your right whether or not you wish to answer any questions to us, okay, but you did answer these questions to me before and I'd like to ask `em of you again. Would it be all right if I do that?
Defendant: I would like to talk to you guys again in two days, that's all I ask, just two days from now, I would like to talk to y'all then.
Detective Guy: Okay, I can't promise that I'll be able to talk to you in two days from now, okay, you understand that?
Defendant: (Did not hear response)
Detective Bradstreet: Can't hear you, we can't hear you on the tape when you nod your head.
Defendant: Okay.
Detective Guy: As I asked you, you know II can't guarantee that I can, I'll be able to speak to you in two days from now. Okay, you understand that, yes or no or ...
Defendant: Yes, I understand that.
Detective Guy: Okay now, just for the record, the questions that I did ask you after you were advised of your rights was, "Did you molest these three girls?", meaning I.H., Em. H. and El. H. You answered to me, "Yes." And I asked you, "Why do you think you molested the girls?" Meaning I.H., Em. H. and El. H. And your answer was, "Because I am sick and need help." And you also stated that you were molested as a child. Am I correct in repeating these questions and answers?
Defendant: Yes sir, you are.
In the second statement, the defendant admitted to engaging in sexual intercourse with the victim. Prior to that admission, the following exchange occurred:
Detective Bradstreet: Okay, Mr. Hamilton [defendant], prior to my interviewing you, asking you these questions, did I advise you of your rights?
Defendant: Yes, ma'am.
Detective Bradstreet: That you did not have to talk to me. You had the right to have an attorney. If you cannot afford an attorney one will be provided for you at no cost?
Defendant: Yes, ma'am.
Detective Bradstreet: Did you understand your rights?
Defendant: Yes, ma'am.
Detective Bradstreet: Were you also given an opportunity to review your rights on a rights form?
Defendant: Yes, ma'am.
Detective Bradstreet: Did you sign the form?
Defendant: Yes, ma'am.
Detective Bradstreet: At the time did you also sign the form indicating that you wish to speak with me in 48 hours?
Defendant: Yes, ma'am.
Detective Bradstreet: As a result of signing that form have you changed, did you change your mind and agree to give me a statement today?
Defendant: Yes, I have.
Detective Bradstreet: Did I force you into changing your mind?
Defendant: No, ma'am, you did not.
Detective Bradstreet: Have I forced you in any manner to talk to me to give me a statement?
Defendant: No, ma'am.
Detective Bradstreet: Have I coerced you, promised you or threatened you?
Defendant: No, you did not.
* * * * * *

*944 Detective Bradstreet: Okay. Are you also aware that I am taping this interview?
Defendant: Yes, I am.
Detective Bradstreet: You have any objections to that?
Defendant: No, ma'am.
At the conclusion of the hearing, the trial court denied the motion to suppress, thus apparently accepting the testimony of the detective.
Before a confession or inculpatory statement can be admitted into evidence, it must be established that the accused who makes the statement during custodial interrogation was first advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Thucos, 390 So.2d 1281, 1284 (La.1980). If the accused alleges police misconduct in reference to the statement, it is incumbent upon the state to rebut these allegations specifically. State v. West, 408 So.2d 1302, 1307 (La.1982).
Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The admissibility of a confession is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. State v. Jackson, 414 So.2d 310, 312 (La. 1982).
Furthermore, the exercise of the right to silence by an accused does not act as a complete bar to all further questioning. However, the police must "scrupulously honor" the right to cut off questioning by the person in custody. Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321 at 326, 46 L.Ed.2d 313 (1975); State v. Loyd, 425 So.2d 710, 716 (La.1982). The question of whether an accused's rights are "scrupulously honored" is a factual issue which depends upon the totality of the circumstances involved under the particular facts of each case. State v. Brooks, 505 So.2d 714, 722 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). The factors to be considered are who initiates the further questioning; the time delay between the original request and subsequent interrogation; whether Miranda warnings were given before each separate interrogation; whether waiver of rights forms were signed; and whether pressures were asserted on the accused by the police between the time he invoked his right and the subsequent interrogation. State v. Brooks, supra, at 722.
In reviewing the trial court's ruling as to the admissibility of a confession, the trial court's conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Loyd, supra. The trial court's ruling will not be overturned on appeal unless it is unsupported by the evidence. State v. Vaccaro, 411 So.2d 415 (La.1982).
In the instant case, the evidence supports the trial court's ruling. The defendant was advised of his rights when the interrogation began. After the defendant invoked his right to silence by advising the detectives that he wished to resume questioning in 48 hours, the detectives ceased their interrogation. The detectives then had the defendant give a recorded statement of that invocation of his right to remain silent. Thus, the defendant was aware that he could choose silence over speech.
Further, while Detective Bradstreet was taking the first recorded statement she again advised the defendant of his rights. The defendant indicated that he understood those rights. When questioned, the defendant indicated that he had not been forced or coerced into speaking with the detectives. Detective Bradstreet asked the defendant if he wished to remain silent so that he could speak with an attorney; however, the defendant merely replied that he wanted to "search" himself. Detective Bradstreet then questioned the defendant regarding the nature of their investigation. At that moment the defendant's right to silence had been scrupulously honored.
*945 Thereafter, Detective Guy asked the defendant if he understood his rights and the defendant responded that he did. After Detective Guy informed the defendant that he wished to ask him some questions which he had previously posed to him, he advised the defendant, "[I]t's your privilege and your right whether or not you wish to answer any questions to us." The defendant expressed his desire to speak to the detectives in "two days" and Detective Guy subsequently questioned the defendant regarding earlier inculpatory statements he had made.
Rather than choosing to remain silent as he had done earlier, the defendant voluntarily answered Detective Guy's questions. Considering that the defendant had been repeatedly advised of his rights, that he previously had asserted his right to cut off questioning, and that the assertion had been honored, the questioning by Detective Guy did not violate the defendant's right to silence.
Following the conclusion of the first recorded statement, the detectives again ceased their interrogation. When the defendant spoke with Sergeant Washington shortly thereafter, she informed the defendant that Detective Bradstreet could not speak to him again and he then agreed to give the second recorded statement. Prior to recording the second statement, Detective Bradstreet again advised the defendant of his rights and at the beginning of the statement she ascertained that the defendant had been advised of his rights and that he understood them. Furthermore, at no time did the defendant assert his right to remain silent.
Moreover, it appears that both recorded statements were freely and voluntarily given. Both detectives testified that the defendant was not threatened nor did he ask for an attorney. Detective Bradstreet also testified that no one threatened to send the defendant "up the river" for life as an aggravated rapist of a juvenile or to publicize that fact to the other inmates. She thereby rebutted the defendant's allegations regarding such threats. In addition, the recorded statements themselves show that they were voluntarily given. Accordingly, the trial court did not err in refusing to suppress the statements.

ASSIGNMENT OF ERROR NUMBER TWO
Also assigned as error are any and all errors patent on the face of the record. A review of the record reveals there is a patent error. The defendant's sentence is illegally lenient in that the judge failed to specify that any portion of the imprisonment would be served without benefit of probation, parole, or suspension of sentence. La.R.S. 14:42.1(B). However, when the State fails to raise the issue by motion or argument to the court the error will not be corrected on appeal. State v. Fraser, 484 So.2d 122, 124 (La.1986); State v. Mayeux, 556 So.2d 142, 144 (La.App. 5th Cir.1990); writ denied, 564 So.2d 315 (La.1990).

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.