711 So.2d 848 (1998)
STATE of Louisiana
v.
Robert JOHNSON.
No. 97-KA-867.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1998.
*849 Paul D. Connick, Jr., Terry M. Boudreaux, Louise Korns, District Attorney, Gretna, for plaintiff-appellee.
Martin E. Regan, Jr., Regan & Boshea, New Orleans, for defendant-appellant.
Before GRISBAUM, GAUDIN and WICKER, JJ.
GAUDIN, Judge.
Robert Johnson was tried before a 12-person jury in the 24th Judicial District Court and found guilty of two counts of attempted first degree murder, one count of attempted second degree murder and two counts of aggravated rape.
For each of the attempted first degree murder convictions, Johnson was sentenced to 50 years at hard labor; and for attempted second degree murder, he was sentenced to 50 years. For each of the aggravated rape convictions, Johnson was sentenced to 50 years. All of the sentences were without parole, probation or suspension, and the sentences were to run consecutively.
On appeal, Johnson assigned these district court errors:
(1) the motion to suppress his statement was wrongfully denied,
(2) evidence was insufficient to convict him of all of the five counts,
(3) the convictions violate the constitutional prohibition against double jeopardy in that the elements of the aggravated rape convictions were necessarily inclusive elements of the attempted first degree murder convictions, and
(4) the sentences were excessive.
For the following reasons, Johnson's convictions for attempted first degree murder are reversed and set aside; otherwise, we affirm the other convictions and sentences.

JOHNSON'S TRIAL
Johnson was tried on March 19, 20 and 21, 1997, during which various witnesses testified for the state. Prior to September 27, 1996, Johnson had been dating Ms. Jami Lehmann, who shared an apartment in Metairie with Ms. Marcella Diaz. Johnson occasionally stayed overnight in the apartment.
According to trial testimony, Lehmann was driving her automobile on September 27th when Johnson called on the beeper. He asked her to return to the apartment because he needed a ride to work. Ms. Bridgette Borg was with Lehmann in the car.
When Lehmann and Borg arrived at the apartment, Lehmann went into one of the bedrooms with Johnson while Borg and Diaz watched television in the living room.
Lehmann testified that Johnson said he had a present for her, a pistol, which he placed on her leg. He told her not to scream, that he did not love her, that she was a whore and that she was trying to control his life. Johnson put the gun to Lehmann's head, whereupon she closed her eyes. He told her to open her eyes because he wanted to look her in the eyes when she died. He also said that if either Borg or Diaz came into the bedroom, he would have to get them "involved" because they would know what was going on.
*850 Diaz did enter the bedroom and did see Johnson pointing the pistol at Lehmann. Johnson told her to go back into the living room, which she did.
Johnson then carried Lehmann into the living room and told the three women that he was going to kill them. He proceeded to tie each woman up with wire and he placed them on the floor.
Lehmann said that if she and Diaz would "give him some," he would let them live. Diaz said that she would rather die than have sexual intercourse with Johnson, but he took her and Lehmann into the bedroom and raped both. Johnson brought Borg into the bedroom and told the three women that he was going to burn them.
He left the bedroom but returned and poured charcoal lighter fluid on the women. He tried to ignite Borg's cigarette lighter but he wasn't able to. Johnson then obtained matches from the kitchen and lit one over Lehmann's head, saying that he wanted to see her burn so she would need skin grafts and not be pretty anymore.
Johnson then left the bedroom for several hours but he returned. The women remained tied up. Johnson said that he was going to knock all of them out before he lit a fire so they could not scream or try to escape.
Somehow Diaz was able to untie her hands and jump on Johnson's back. She told Lehmann to run away. Although her feet were still bound, Lehmann managed to hop out of the apartment and shout for help. Johnson gave chase, with the pistol in his hand. Diaz followed Johnson and jumped on him, again telling Lehmann to run.
Lehmann fell down the apartment complex's stairs. She heard gunshots and heard Diaz screaming that she had been shot. Lehmann managed to reach another apartment and police were called.
When Officer Deborah Labit arrived at the scene, she said that Lehmann smelled of gasoline as did the apartment. She found the bed saturated with charcoal lighter fluid.
Johnson fled, but he was later arrested in Florida and returned to Louisiana to face criminal charges. At trial, Johnson did not present any evidence.

ASSIGNMENT NO. 1
Following Johnson's arrest in Florida, Officer Labit and another detective went to Miami to escort the accused back to Louisiana. Upon arrival at Jefferson Parish, Johnson said he wanted to make a statement and he did.
In this assignment of error, Johnson contends that his right to remain silent was violated and that the statement he made should have been suppressed.
Johnson's motion to suppress was heard just before trial. Officer Labit testified that she met with Johnson in Miami and advised him of his rights. Johnson signed a "Rights of Arrestee" form. Officer Labit noted on the form that Johnson had "refused" to waive his right to remain silent. Officer Labit explained that Johnson told her that he was not going to waive his right at that point in time because he was not sure what he wanted to do, and that he wanted some time to think about it. She explained further that she specifically asked Johnson whether he meant that he did not want to make a statement at all, or whether he did not wish to give a statement at that time. According to Officer Labit, Johnson told her that while he did not want to make a statement at that time, he might want to make a statement later.
Upon arriving at the airport in New Orleans, Officer Labit asked Johnson if he had decided whether or not he wanted to make a statement. Johnson said he still wanted to think about it, and that he needed some "help." Officer Labit told Johnson that he could speak with a doctor at the Jefferson Parish Correctional Center. She explained that while she was aware that Johnson was seeking psychiatric help for depression, and that he had previously been under treatment for depression, she could not personally provide him with psychiatric aid and that all she could do was notify the doctor at the jail.
Officer Labit then transported Johnson to the Jefferson Parish Correctional Center. Upon arriving at the jail, Officer Labit advised *851 Johnson that they had reached the jail, and told him that if he wanted to make a statement prior to entering the jail, it was time to do it. Officer Labit still did not question Johnson regarding the accusations against him. According to the officer, Johnson told her at this time that he had thought about it, and that he wished to make a statement. Therefore, Officer Labit took Johnson to the Criminal Investigations Bureau.
Following their arrival at the Criminal Investigations Bureau, Johnson signed the bottom of the Rights of Arrestee form, specifically the waiver of rights paragraph. The state introduced this form into evidence. Officer Labit testified that prior to taking Johnson's statement, she did not threaten or coerce him in any way and that she did not offer him anything of value for his statement. The officer stated that Johnson did not appear intoxicated, that he appeared in control of his mental faculties; and that when she spoke to him, he was aware of his surroundings, he knew his name and that he appeared to have a clear mind.
Officer Labit and another detective began an interview of Johnson that lasted an hour and 15 minutes. Officer Labit testified that during the interview, she advised Johnson that if she asked a question that he did not want to answer, he could refuse to answer. Johnson did refuse to answer some of the questions that were asked.
When Johnson indicated that he wished to end the interview, Officer Labit asked whether anyone had forced him to give the statement, and whether anyone had threatened or coerced him in order to obtain his statement. According to Officer Labit, as well as the transcribed statement, Johnson stated that no one had coerced, forced or tricked him into making a statement.
Prior to giving the statement, Johnson was told that he had earlier refused to give a statement; Johnson then said that he now wanted to make a statement. In the statement, Johnson said: "I wanna make perfectly clear, I never wanted to hurt them girls. I never attempted all them things."
The exercise of the right to remain silent does not act as a complete bar to further questioning, as stated in State v. Hamilton, 648 So.2d 939 (La.App. 5 Cir. 1994), and in other cases including Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). When there is further questioning, these factors are considered by the court in deciding whether the right to remain silent has been violated: (1) who initiated the further questioning, (2) the delay between the original request and subsequent questioning, (3) whether Miranda warnings were given before each separate interrogation, (4) whether waiver of rights forms were signed and (5) whether there was any pressure placed on the accused by police between the time he invoked his right to remain silent and the later questioning.
Admissibility of a statement depends on the totality of circumstances. A trial judge's rulings are not overturned unless not supported by evidence.
Here, Officer Labit's uncontradicted testimony was accepted as factual. It appears clear that although Johnson at first refused to make a statement, he was not pressured or coerced and at no time did he ask for an attorney. The admission of Johnson's statement because he had willingly waived his right to remain silent was not error. While it is true that Officer Labit did institute further questioning when she and Johnson arrived at the Jefferson Parish jail, this was in accordance with what Johnson had said in Miami, i.e., that he might later wish to make a statement. In any event, Johnson was not forced or intimidated and that his right to remain silent was explained at least twice and was knowingly waived in Jefferson Parish.

ASSIGNMENT NO, 2
In his brief to this Court, Johnson argues that the evidence was insufficient to convict him of the attempted second degree murder of Borg. He contends that there was no proof that he had the specific intent to kill her or to inflict great bodily harm, as required by LSA-R.S. 14:30.1.
During trial, the jurors heard the unrebutted testimony of the three victims, who said that they were tied up, doused with an *852 inflammable liquid and told that they were going to be killed. After not being able to ignite the cigarette lighter, Johnson did light a match which burnt out before anything caught on fire.
Specific criminal intent is a state of mind and cannot and need not be proven as a fact. Specific criminal intent is inferred from the actions of the accused. There is ample evidence here that Johnson intended to kill or at least inflict great bodily harm on Borg and on the other women and that the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and State v. Lassere, 683 So.2d 812 (La.App. 5 Cir.1996), standards had been met and satisfied.
Johnson does not directly allege in his brief that he did not have specific intent to kill or inflict great bodily harm on Lehmann or Diaz, just Borg.

ASSIGNMENT NO. 3
Johnson argues in this assignment of error that his convictions of attempted first degree murder of Lehmann and Diaz based on his aggravated rape of these women subjected him to double jeopardy. The state concedes that this argument is correct. See State v. S.P., 608 So.2d 232 (La.App. 5 Cir. 1992). When proof of the commission of a felony is an essential element of first degree murder or attempted first degree murder, a defendant cannot be punished for both first degree murder or attempted first degree murder and the underlying felony.
The remedy is to vacate the less severely punished crime and affirm the more severely punished offense. See State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990), and State v. Doughty, 379 So.2d 1088 (La. 1980). Accordingly, the convictions and two life sentences for aggravated rape are affirmed; the convictions and 50-year sentences for attempted first degree murder are voided.

ASSIGNMENT NO. 4
Appellant contends that his consecutive sentences were excessive. In imposing the sentences, the trial judge stated:
"All right. The Court finds that the crimes committed by the defendant were especially heinous. The Court finds that the defendant premeditated these unspeakable acts, carried them out with malice, and tortured the victims for a period of several hours.
"The Court further finds that the defendant showed no remorse for his actions and no respect for human life.
"The Court further believes that Robert Johnson is a menace to society."
The trial judge ordered a presentence investigation but Johnson's attorney said that he saw no need for one, inasmuch as two of the convictionsthose for aggravated rape carried with them mandatory life sentences. In accord with defense counsel's suggestion, the presentence investigation was canceled.
On appeal, Johnson points out that all of his convictions resulted from one transaction.
The imposition of consecutive sentences arising from a single course of conduct does require particular justification but they are not necessarily precluded, particularly if the trial judge concludes that the defendant poses an unusual risk to public safety, as was the case with Johnson. See State v. Jackson, 694 So.2d 440 (La.App. 5 Cir.), writs denied at 703 So.2d 609 (La.1997).
Considering what is in the record and what is not, we cannot say Johnson's sentences were excessive or an abuse of the trial judge's discretion.

ERROR PATENT
The trial judge did not fully advise Johnson of the prescriptive period for post-conviction relief as mandated by LSA-C. Cr.P. art. 930.8(C).
We remand so that written notice of this article be sent to Johnson and proof placed in this record that he has received the notice.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR ART. 930.8(C) NOTICE.